# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JUAN CARLOS TORRES, | ) | No.  EDCV 11-315 AGR |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Defendant. | ) | |

Plaintiff ("Torres") filed this action on February 22, 2011.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on March 14 and 22, 2011.  (Dkt. Nos. 6, 7.)  On November 29, 2011, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

## PROCEDURAL BACKGROUND

On November 5, 2007, Torres filed applications for disability insurance benefits and supplemental security income, alleging an onset date of September 30, 2006. Administrative Record ("AR") 15, 112-14, 120-22. The applications were denied initially and upon reconsideration. AR 15, 84-85. Torres requested a hearing before an Administrative Law Judge ("ALJ"). AR 102. On August 24, 2009, the ALJ conducted a hearing at which Torres, a medical expert, and a vocational expert ("VE") testified. AR 51-83. On November 2, 2009, the ALJ issued a decision denying benefits. AR 12-26. On December 22, 2010, the Appeals Council denied the request for review. AR 2-4. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

III.

## DISCUSSION

### A.   Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.   The ALJ's Findings

The ALJ found that Torres has the severe impairments of "status post stroke on September 30, 2006, with residual right sided weakness; torn meniscus in the right knee; and mood disorder associated with generalized medical condition." AR 17. He has the residual functional capacity ("RFC") to perform sedentary work. AR 21. He can stand and walk 4 hours in an 8 hour workday, sit 6 hours in an 8 hour workday, and lift/ carry 20 pounds occasionally and 10 pounds frequently. *Id.* He is limited to occasional pushing and pulling, including operation of hand and foot controls, with the right upper and right lower extremities. *Id.* He is limited to occasional climbing, crouching, crawling and kneeling. *Id.* He is limited to the performance of simple, repetitive tasks. *Id.* Torres is unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that he can perform. AR 24-25.

### C.   Step Five of the Sequential Analysis

At step five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do. *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits. If the Commissioner cannot meet this burden, the claimant is "disabled" and entitled to disability benefits. *Id.* The Commissioner can meet the burden of showing that there is

1 | other work in 'significant numbers' in the national economy that claimant can do by
2 | eliciting the testimony of a vocational expert.  *Id.*

### 1.   Simple, Repetitive Tasks Limitation

4 | Torres contends that the ALJ erroneously relied on the VE's testimony, which
5 | contradicts the Dictionary of Occupational Titles ("DOT").

6 | The DOT raises a presumption as to job classification requirements.  *Johnson v.*
7 | *Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1998).  An ALJ may not rely on a vocational
8 | expert's testimony regarding the requirements of a particular job without inquiring
9 | whether the testimony conflicts with the DOT.  *Massachi v. Astrue*, 486 F.3d 1149,
10 | 1152-53 (9th Cir. 2007) ("the adjudicator has an *affirmative responsibility* to ask about
11 | any possible conflict between that [vocational expert] . . . evidence and information
12 | provided in the [DOT]") (citing Social Security Ruling 00-4p)[1] (emphasis in original).

13 | Relying on testimony from the VE, the ALJ concluded that there were sufficient
14 | jobs in the economy that Torres could perform.  AR 24-25.  The VE identified four jobs
15 | that Torres could perform:  cashier II, order clerk, final assembler – eyeglasses, and call
16 | out operator.  AR 25, 77-79.  The VE stated that her testimony was consistent with the
17 | DOT except where she eroded the number of available jobs to account for Torres'
18 | standing and walking limitations.  AR 77, 80.

19 | According to the DOT, cashier II, order clerk, and call out operator all require a
20 | reasoning level of 3, which means:

21 | Apply commonsense understanding to carry out instructions furnished in
22 | written, oral, or diagrammatic form.  Deal with problems involving several
23 | concrete variables in or from standardized solutions.

24 | DOT 211.462-010, 209.567-014, 237.367-014.

---

26 | [1]  Social Security rulings do not have the force of law.  Nevertheless, they "constitute
27 | Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (footnotes omitted).

1    However, the job of final assembler – eyeglasses requires a reasoning level of 1,

2    which means:

3        Apply commonsense understanding to carry out simple one-or two-step

4        instructions.  Deal with standardized situations with occasional or no

5        variables in or from these situations encountered on the job.

6    DOT 713.687-018.

7        The ALJ's RFC determination limits Torres to "simple, repetitive tasks."  AR 21.

8    Torres argues that jobs requiring a reasoning level of 3 should be considered outside

9    the requirement of simple repetitive tasks.  He further argues that he could not do the

10   final assembler – eyeglasses job, which requires a reasoning level of 1, because it

11   required bilateral and at least frequent level of fingering and handling.

12       The court has not located a published decision by the Ninth Circuit on the issue of

13   whether someone limited to simple, repetitive work can perform jobs requiring Level 3

14   reasoning.[2]  However, the district courts in this circuit have generally held that a

15   limitation to simple, repetitive tasks is inconsistent with jobs requiring Level 3 reasoning.

16   *See, e.g., Grimes v. Astrue*, 2011 WL 164537, at *4 (C.D. Cal. Jan. 18, 2011); *Carney*

17   *v. Astrue*, 2010 WL 5060488, at *5 (C.D. Cal. Dec. 6, 2010); *Etter v. Astrue*, 2010 WL

18   4314415, at *3 (C.D. Cal. Oct. 22, 2010); *Bagshaw v. Astrue*, 2010 WL 256544, at *5

19   (C.D. Cal. Jan. 20, 2010); *Pak v. Astrue*, 2009 WL 2151361, at *7 (C.D. Cal. Jul.14,

20   2009); *Tudino v. Barnhart*, 2008 WL 4161443, at *11 (S.D. Cal. Sept. 5, 2008).  A

21   minority of district courts in this circuit have held, however, that simple, repetitive tasks

22   are not necessarily inconsistent with Level 3 reasoning.  *See, e.g., Dahl v. Astrue*, 2011

23   WL 2837660, *1 (C.D. Cal. July 18, 2011) (looking to the record to determine whether a

24   _____

25       [2]  There is a split among the circuit courts on whether a limitation to simple, repetitive
     work is compatible with the performance of jobs requiring Level 3 reasoning. *Compare*
26   *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009); *Hillier v. Soc. Sec. Admin.*, 486 F.3d
     359, 367 (8th Cir. 2007) *with Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).

27

28

1   claimant can perform the type of work identified by the vocational expert); *Wentz v.*
2   *Astrue*, 2009 WL 3734104, at *14 (D. Or. Nov. 4, 2009) (same).  The Commissioner
3   urges the court to follow the minority view.  It is unnecessary to reach that issue.

4        The VE's testimony regarding the final assembler – eyeglasses job, which
5   requires a reasoning level of 1, does not conflict with the DOT.  A "simple repetitive
6   tasks" limitation has been held consistent with jobs requiring Level 1 reasoning.
7   *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1136 n.10 (C.D. Cal. 2009).  Torres does not
8   dispute that simple repetitive tasks are consistent with Level 1 reasoning.

9                    **2.  Manual Limitations**

10       Torres contends the ALJ's finding that he could perform other work is inconsistent
11  with the VE's testimony regarding the bilateral requirement and the frequent level of
12  fingering and handling in sedentary work.

13       The ALJ's RFC determination included an occasional pushing and pulling
14  limitation with the right extremities.  AR 21.  The VE testified that a person who was
15  restricted to occasional use of the right upper extremity for pushing and pulling could
16  perform the jobs of cashier II, call out operator, order clerk, and final assembler–
17  eyeglasses.  AR 76-77.  The ALJ adopted the VE's finding.  AR 24-25.

18       In response to different hypotheticals, the VE testified that a person who was
19  restricted to occasional handling and fingering could not perform the jobs of cashier II,
20  order clerk, final assembler – eyeglasses, or any other sedentary work because
21  sedentary work requires at least frequent bilateral fingering and handling.  AR 78.  The
22  VE testified that a person with occasional handling and fingering limitations could
23  perform the call out operator job, but not if the person must also avoid frequent public
24  contact.[3]  AR 78-80.

25
26  _____
    [3]  In the Reply, Torres argues that the call out operator job, with 18,201 jobs
27  nationally and 1,006 jobs locally, does not constitute a significant number of positions to
    support the ALJ's finding.  JS 13.  Torres relies on *Coletta v. Massanari*, 163 F. Supp.
28  2d 1101 (N. D. Cal. 2001), which found that 4,752 jobs in the national economy and 363

                                    6

1    The ALJ did not adopt the fingering and handling limitations or the public contact

2    limitation in his RFC assessment.  AR 21.  Contrary to Torres' assertions, the ALJ's

3    findings are not inconsistent with the VE's testimony.

4    Substantial evidence supports the ALJ's Step Five determination.

5    **D.    Development of the Record**

6    Torres contends the ALJ failed to develop the record regarding his mental

7    impairments.

8    It is the claimant's duty to prove she is disabled.  *Mayes v. Massanari*, 276 F.3d

9    453, 459 (9th Cir. 2001) (as amended); *see* 42 U.S.C. § 423(d)(5)(A) (the claimant must

10    furnish medical and other evidence of her disability); 20 C.F.R. § 404.1512(c) ("You

11    must provide medical evidence showing that you have impairment(s) and how severe it

12    is during the time you say you are disabled.").

13    "The ALJ . . . has an independent duty to fully and fairly develop the record and to

14    assure that the claimant's interests are considered."  *Tonapetyan v. Halter*, 242 F.3d

15    1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted).  "An ALJ's duty to

16    develop the record further is triggered only when there is ambiguous evidence or when

17    the record is inadequate to allow for proper evaluation of the evidence."  *Mayes*, 276

18    F.3d at 459-60.  This principle does not, however, allow a claimant to shift her own

19    burden of proving disability to the ALJ.  *Id.* at 459.

20    As the ALJ noted, Dr. Karlsson, Torres' Qualified Medical Examiner ("QME") for

21    the worker's compensation claim, opined that Torres could make routine, common

22    sense decisions and restricted him from working at jobs causing "undue stress."  AR 18,

23    380, 382.  She precluded him from "working in a stressful atmosphere" with "excessive

24

25

26    jobs in California did not constitute significant numbers.  *Id.* at 1106-07.  *Coletta* is
      distinguishable because the number of call out operator jobs available here is
27    significantly higher.  *See Barker v. Sect'y of Health & Human Servs.*, 882 F.2d 1474,
      1479 (9th Cir. 1989) (holding that 1,266 jobs in region constitutes significant numbers).
28

1   pressure and unordinary workload," but did not preclude him from all work.[4]  AR 380.

2   He could work "occasional, but not excessive overtime."  *Id.*  Dr. Karlsson noted that

3   Torres' former job caused "a good deal of stress."  AR 376.

4         Contrary to Torres' argument, Dr. Karlsson did not restrict Torres to "no stress."

5   Thus, the VE did not testify that no work would be available "based on Dr. Karlsson's

6   restriction," as Torres argues.  In response to a hypothetical posed by Torres' attorney,

7   the VE testified that an individual who could be exposed to "no stress" could not work

8   because "all jobs have some stress to them."  AR 25, 81.

9         The ALJ's duty to develop the record further was not triggered.  The ALJ did not

10  find that the record was ambiguous or inadequate regarding the effects of stress on

11  Torres' ability to work.  Nor did any physician render an opinion that the record was

12  ambiguous or inadequate regarding stress.  *See Tonapetyan*, 242 F.3d at 1150 (duty to

13  develop record existed when ALJ relied on physician who expressed that more medical

14  evidence was needed to state a diagnostic opinion).  The ALJ did not err.

15  ## E.   Credibility

16        "To determine whether a claimant's testimony regarding subjective pain or

17  symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v.*

18  *Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

19        At step one, "the ALJ must determine whether the claimant has presented

20  objective medical evidence of an underlying impairment 'which could reasonably be

21  expected to produce the pain or other symptoms alleged.'"  *Id.* (citations omitted);

22  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*).  The ALJ found that

23  Torres' "medically determinable impairments could reasonably be expected to cause

24  the alleged symptoms."  AR 23.

25  _____

26        [4]  Contrary to Torres' argument, the ALJ recognized the stress restriction from Dr.
    Karlsson.  AR 18.  The ALJ considered Dr. Karlsson's opinion along with the opinions of
27  Dr. Dusovich, who examined Torres for complaints of insomnia, Dr. Colonna, a
    psychological consultative examiner, and Dr. Balson, a State Agency review physician.
28  AR 19, 20, 23, 82, 406-13, 430, 441.

1   "Second, if the claimant meets this first test, and there is no evidence of

2   malingering, 'the ALJ can reject the claimant's testimony about the severity of [the

3   claimant's] symptoms only by offering specific, clear and convincing reasons for doing

4   so.'" *Lingenthofelter*, 504 F.3d at 1036 (citations omitted).  "In making a credibility

5   determination, the ALJ 'must specifically identify what testimony is credible and what

6   testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968,

7   972 (9th Cir. 2006) (citation omitted).

8       The ALJ mentioned no evidence of malingering.  AR 15-26.  In finding Torres'

9   credibility "suspect," the ALJ discussed at least three factors for rejecting Torres'

10  testimony regarding his complete inability to perform work:  (1) inconsistencies in his

11  testimony and between his testimony and the medical record; (2) conservative

12  treatment; and (3) secondary gain.  AR 22-23.

13          **1.  Inconsistencies**

14      An ALJ may consider inconsistencies in a claimant's testimony when weighing

15  credibility.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  The ALJ

16  discounted Torres' credibility on the ground that he testified that he could read and

17  watch sporting events, which he reasoned "contradicted the claimant's oral testimony

18  that he has visual problems, especially when things move too rapidly."  AR 23, 57, 63-

19  64, 176.

20      The ALJ also discounted Torres' credibility based on inconsistencies between his

21  testimony and the medical record.  Although lack of objective medical evidence

22  supporting the degree of limitation "cannot form the sole basis for discounting pain

23  testimony," it is a factor that an ALJ may consider in assessing credibility.  *Burch v.*

24  *Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The ALJ correctly noted that the functional

25  assessments in the record do not "support the level of limitations [Torres] espouses."

26  AR 22.  Torres' treating doctor, Dr. Boyarsky, opined that Torres could lift and/or carry a

27  maximum of 30 pounds, frequently lift and/or carry 10 pounds, and occasionally lift

28  and/or carry 20 pounds.  AR 321.  Torres could stand and/or walk up to 4 hours per

day, sit up to 8 hours per day, and push and/or pull up to 70 pounds.  *Id.*  He could

occasionally climb, balance, crawl, reach, handle, and finger.  AR 321-22.  He could

frequently speak.  AR 322.  He was not limited in stooping, kneeling, crouching,

twisting, seeing, or hearing.  AR 321-22.  Dr. Boyarsky recommended vocational

rehabilitation to allow Torres to return to work with work restrictions.  AR 323-24.  Dr.

Karlsson concluded Torres could work if he avoided undue stress.  AR 376, 380.

Consultative examiner Dr. Lim concluded Torres could stand and/or walk for 4 hours

per day, sit for 6 hours per day, lift and/or carry 20 pounds occasionally and 10 pounds

frequently, occasionally push and pull with the right upper and right lower extremities,

and occasionally climb, crouch, crawl, and kneel.  AR 424.  Dr. Colonna concluded

Torres could understand, remember and carry out simple instructions without difficulty,

and could understand, remember and carry out detailed instructions with mild difficulty.

AR 430.  He could make simplistic work-related decisions and could interact

appropriately with others.  *Id.*

The ALJ noted that diagnostic testing was negative for cognitive impairment.  AR

22.  The ALJ noted that Torres' speech difficulties were "repeatedly contradicted by the

record," except on one occasion in which Torres' speech was "very slightly dysarthric"

with evidence of stuttering and stammering.  AR 22, 369.  In support, the ALJ cited

notes from Beverly Hospital immediately after Torres' stroke that indicate that Torres'

speech was "significantly improved" after his stroke, and the record as a whole, which

lacks evidence of a cognitive impairment.  AR 22, 227.  Torres contends the record

contains evidence referring to his speech and cognitive deficits.  JS 20, AR 153, 366,

369, 394.  While there are references in the record to Torres' clear speech, there are

also references in the record to Torres' impaired speech.  AR 154, 331, 345, 366, 369,

379, 394, 424.  It is the ALJ's province to resolve conflicts in the medical record.  When

the evidence is susceptible to more than one rational interpretation, the court must defer

to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

1    The ALJ noted that Torres did not complain during medical examinations about

2    "most of the things he testified to at the hearing."[5]  AR 22.  The medical record reflects

3    Torres did not complain about adverse side effects from medications.  *See* AR 61, 64.

4    Whereas he testified at the hearing that he could sit for "half an hour or so" before

5    having to get up, and he had "difficulty in lifting" coins, he reported to Dr. Boyarsky on

6    March 29, 2007 that his right-sided weakness does not interfere with sitting and only

7    slightly interferes with lifting.[6]  AR 65, 311.  Whereas Torres testified he has difficulty

8    gripping, the medical record indicates Torres' grip strength was 55 pounds with the right

9    hand and there is no indication of a complaint about difficulty gripping.  AR 422.  An ALJ

10   may properly rely on a claimant's failure to report medical problems in discounting a

11   claimant's credibility.  *See Greger*, 464 F.3d at 972 (failure to report shortness of breath

12   or chest pain).

13                              **2.  Conservative Treatment**

14   The ALJ discounted Torres' credibility based on the conservative treatment he

15   received.  AR 22.  "[E]vidence of 'conservative treatment' is sufficient to discount a

16   claimant's testimony."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).  The ALJ

17   noted that "the doctors did not prescribe much treatment or a lot of medication for

18   [Torres'] complaints."  AR 22.  Torres takes aspirin and applies topical anti-inflammatory

19   gels for his physical pain.  AR 327, 343, 359, 421, 427.  The ALJ properly considered

20   aspirin and anti-inflammatory gels as conservative treatment.  *Parra*, 481 F.3d at 750-

21   51 (reliance on over-the-counter pain medication may be used to discount credibility);

22   *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (describing anti-

23

24   ────────────

25   [5]  The ALJ found that Torres had severe impairments, and the record does contain
     many of Torres' complaints about right sided weakness, right knee pain, anxiety,

26   depression, and insomnia, all of which he testified to at the hearing.  *See, e.g.*, AR 57-
     60, 222, 283, 289, 295, 298, 311, 344, 361, 391-92, 407, 415, 421.

27

28   [6]  Dr. Boyarsky allowed Torres to lift and/or carry a maximum of 30 pounds and sit a
     total of 8 hours per 8 hour day.  AR 321.

1  inflammatory medication as conservative treatment).  For his other complaints, Torres

2  takes Fluoxetine for depression and takes Zolpidem and Sonata for insomnia.  AR 160,

3  421, 427.  In 2006, he took Temazepam for six weeks and had approximately six

4  sessions of cognitive-behavioral therapy for insomnia.  AR 411.  For two months in

5  2007, he engaged in psychotherapy, with biofeedback for stress management, three

6  times a week.  AR 367, 403.  The ALJ's reliance on conservative treatment is supported

7  by substantial evidence.

8              **3. Secondary Gain**

9         The ALJ noted that Torres' involvement in a pending worker's compensation

10  claim suggests the possibility of secondary gain.  AR 23.  To the extent the ALJ

11  discredited Torres' testimony because Torres sought benefits, that alone is not a valid

12  reason.  *See Ratto v. Sec'y, Dept. of Health & Human Servs.*, 839 F. Supp. 1415, 1428-

13  29 (D. Or. 1993) ("If the desire or expectation of obtaining benefits were by itself

14  sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or

15  friends, or family) would ever be found credible.").

16         Although the ALJ may not rely on this reason, remand would not necessarily be

17  warranted.  In *Carmickle v. Comm'r, SSA*, 533 F.3d 1155 (9th Cir. 2007), the Ninth

18  Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding

19  were invalid.  When an ALJ provides specific reasons for discounting the claimant's

20  credibility, the question is whether the ALJ's decision remains legally valid, despite such

21  error, based on the ALJ's "remaining reasoning *and* ultimate credibility determination."

22  *Id.* at 1162 (italics in original). Reliance on an illegitimate reason(s) among others does

23  not automatically result in a remand.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359

24  F.3d 1190, 1197 (9th Cir. 2004).  In light of the ALJ's valid reasons for discounting

25  Torres' credibility and the record as a whole, substantial evidence supported the ALJ's

26  credibility finding.  *See Bray v. Comm'r. of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th

27  Cir. 2009) (any error was harmless even if record did not support one of four reasons

28  for discounting claimant's testimony).  Therefore, "we may not engage in

1    second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec.*

2    *Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

3          **F.    Lay Witness Statement**

4          Torres argues the ALJ improperly discounted his wife's statements.

5          The ALJ considered the lay witness statement of Torres' wife and discounted her

6    statement because it was "entirely dependent upon the claimant," who was not "fully

7    credible," and her descriptions were "belied by the objective medical record."  AR 23-24.

8          Mrs. Torres provided a Function Report – Adult – Third Party, dated November

9    20, 2007.  AR 163-70.  She described Torres' daily activities as watching television,

10   reading, and going outside in the backyard.  AR 163.  She stated Torres' condition

11   affected his lifting, squatting, bending, standing, reaching, walking, sitting, kneeling,

12   talking, hearing, stair climbing, seeing, memory, ability to complete tasks, concentration,

13   understanding, ability to follow instructions, and use of his hands.  AR 168.  He can

14   drive, but he is afraid to be alone because the stroke happened when he was driving.

15   AR 166.  The Function Report essentially mirrors Torres' Function Report and

16   testimony.  AR 54-76, 172-79.  Because Mrs. Torres' statement was cumulative, the

17   ALJ properly discounted her credibility.  *See Valentine v. Comm'r of Soc. Sec. Admin.*,

18   574 F.3d 685, 694 (9th Cir. 2009) (When an ALJ has provided clear and convincing

19   reasons for rejecting a claimant's testimony, and the lay witness' testimony was similar

20   to the claimant's testimony, "it follows that the ALJ also gave germane reasons for

21   rejecting the [lay witness'] testimony.").

22         The ALJ discounted Mrs. Torres' statement to the extent it was not supported by

23   the medical record.  AR 23-24.  Medical evidence provides a valid basis for discounting

24   lay witness testimony.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason

25   for which an ALJ may discount lay testimony is that it conflicts with medical evidence.");

26   *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (stating inconsistency

27   with medical evidence is a germane reason for discrediting lay witness).  As discussed

28   above, the functional assessments of Torres' treating doctors showed that Torres'

1  impairments were not as limiting as claimed.  AR 319, 321, 380.  Substantial evidence

2  supports the ALJ's decision to discount Mrs. Torres' lay witness statement.

3                                         IV.

4                                  **CONCLUSION**

5        IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

6        IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order

7  and the Judgment herein on all parties or their counsel.

8

9

10  DATED: March 27, 2012
                                  _____
11                                      ALICIA G. ROSENBERG
                                     United States Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28